## Commonwealth v. Maggio

Robert E. Eberhardt, assistant district attorney for the Commonwealth.

John Pushinsky, for defendant.

DAUER, *A.J.*, October 24, 1983—Defendant, Peter Maggio, was arrested in July, 1980, and charged with arson, aggravated assault and criminal homicide.

On July 15, 1980, a hearing was held before the Honorable Samuel Strauss on a petition for involuntary treatment filed by the Allegheny County Behavior Clinic. Christine Martone, M.D., testified that she found defendant to be suffering from a psychotic illness and to be exhibiting poor judgment, poor memory, lack of impulse control, and psychomotor retardation. Dr. Martone found defendant to be incompetent to stand trial and to be a danger to others as well as to himself. In-patient hospitalization was recommended as the least restrictive form of treatment. Accordingly, on July 15, 1980, an order was entered which directed that defendant be committed to Farview State Hospital for a period not to exceed 90 days, pursuant to section 304 of the Mental Health Procedures Act of 1976, 50 P.S. §7304.

Subsequently, an order was entered by this court committing defendant to Farview State Hospital pursuant to section 305 of the Act, 50 P.S. §7305, for a period not to exceed one year.

On January 2, 1981, an order was entered by the Honorable Samuel Strauss finding that, although defendant remained mentally ill and still required involuntary in-patient hospitalization, he no longer required maximum security hospitalization. The court directed that defendant be transferred from Farview State Hospital to the forensic unit of Mayview State Hospital, there to serve out the balance of his October 22, 1980, commitment.

On October 19, 1981, this court entered an order committing defendant to Mayview State Hospital pursuant to section 305 of the Mental Health Proce-

dures Act of 1976, 50 P.S. §7305, for a period not to exceed one year.

On July 20, 1982, pursuant to recommendations made by Mayview State Hospital, defendant was discharged from Mayview State Hospital and remanded to the Allegheny County Jail for disposition of the charges pending against him. Following a coroner's inquest, defendant was bound over for trial. He was then reexamined in the Allegheny County Jail by members of the staff of the Allegheny County Behavior Clinic, who determined that defendant was not competent to stand trial and was in need of in-patient hospitalization.

Consequently, on July 22, 1982, an order was entered by the Honorable Samuel Strauss committing defendant to Mayview State Hospital.

On June 21, 1983, Mayview State Hospital filed a petition with this court to discharge defendant. That petition was denied, and defendant was committed to Mayview State Hospital pursuant to §§304(g)(2) and 305 of the Mental Health Procedures Act of 1976, for a period not to exceed one year.

Subsequently, on August 18, 1983, a hearing was held pursuant to a petition for reconsideration filed on defendant's behalf.

The applicable law in this case is two-fold. The Mental Health Procedures Act of 1976, as amended, 50 P.S. §7101, et seq., establishes the standards to be applied and the procedures to be followed in the commitment of persons diagnosed as mentally ill. "Persons who are mentally retarded, senile, alcoholic or drug dependent shall receive mental health treatment only if they are also diagnosed as mentally ill, but these conditions of themselves shall not be deemed to constitute mental illness . . . . " 50 P.S. §7102. On the other hand, the Mental Health and Mental Retardation Act of 1966, 50 P.S. §4401, et

seq., prescribes the standards to be applied and the procedures to be followed in the commitment of persons diagnosed as being mentally retarded, 50 P.S. §7502(a).

It is undisputed that defendant was mentally ill, as contemplated by the Mental Health Procedures Act, in July of 1982. He was, at that time, committed to Mayview State Hospital. Following his commitment to Mayview in July of 1982, defendant compensated for his mental illness and was not, as of the August 18, 1983 hearing, presently diagnosed as being mentally ill. On the contrary, defendant was diagnosed as suffering from mental retardation of a mild degree.

The Southwest Habilitation Unit, a mental retardation facility located on the grounds of Mayview State Hospital, has consented to accept defendant for treatment, and his counsel is agreeable to that. However, that facility is not a secure facility. In fact, there are no secure, or forensic, mental retardation facilities in the Commonwealth of Pennsylvania.

The issue, then, is whether a person charged with criminal homicide, who is diagnosed as being mentally retarded, may be properly committed to a secure, forensic mental health facility. Section 408 of the Mental Health and Mental Retardation Act of 1966, 50 P.S §4408, authorizes the involuntary commitment of mentally retarded persons charged with a crime to a designated facility. Designated facility is defined as "a state operated facility named by the Department [of Public Welfare], or other facility named by the administrator, for certain purposes or as a place of reception." 50 P.S, §4102.

Section 102 of the Mental Health Procedures Act sets out as a statement of general policy that "the least restrictions consistent with adequate treatment shall be employed." 50 P.S. §7102. Section

401(b) of that act, however, addresses specifically the in-patient status of committed persons charged with crime. The act requires that "During such period [the period of commitment], provisions for his security shall continue to be enforced, unless in the interim a pretrial release is effected, or the term of imprisonment expires or is terminated, or it is otherwise ordered by the court having jurisdiction over his criminal status. In those instances where a person is charged with offenses listed in section 304(g)(2)* and where the court, after hearing, deems it desirable, security equivalent to the institution to which he is incarcerated must be provided." 50 P.S. §7401(b).

Thus, it appears clear that as to mentally ill or mentally retarded individuals charged with crime, security is one of the factors the legislature permits to be considered in determining the degree of restriction which is appropriate.

Further, although the record indicates there is a degree of specialization in mental health facilities, that is, certain facilities are designed exclusively to treat mentally ill persons while others are directed solely toward the mentally retarded, there is nevertheless nothing in either act which limits the court with respect to the facility to which it may commit.

Therefore, in light of the crimes with which defendant has been charged, and in light of the undisputed testimony that neither the Southwest Habilitation Unit nor any other mental retardation facility provides a secure setting, this court must order continued commitment of defendant at Mayview State Hospital pursuant to section 408 of

---

* Section 304(g)(2) concerns persons charged with: murder; voluntary manslaughter; aggravated assault; kidnapping; rape; involuntary deviate sexual intercourse; and arson.

the Mental Health and Mental Retardation Act ·of 1966. ⸱

This awkward and somewhat understandable situation is, perhaps, the fault of the Commonwealth. It has not provided an appropriately secure facility to house mentally retarded individuals charged with committing a crime. However, this court is ever mindful of its overriding duty to protect the citizens of the Commonwealth from persons dangerous to their health and safety. Accordingly, the following order is hereby entered.

## ORDER

And now, this October 24; 1983, it is hereby ordered that the relief requested pursuant to defendant's petition for writ of habeas corpus is hereby denied and, further, that this court's order dated July 12, 1983, be amended to reflect that defendant stands committed to Mayview State Hospital pursuant to section 408 of the Mental Health and Mental Retardation Act of 1966.